UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PANOPTX INC.

     Plaintiff,     No. C 06-7610 MHP

 v.

PROTECTIVE OPTICS INC.    **MEMORANDUM & ORDER**
Re: Defendant's Motion for Summary
Judgment

     Defendant.
_____/

   On December 12, 2006 plaintiff Panoptx, Inc. ("Panoptx" or "plaintiff") brought this action against Protective Optics Inc. ("Protective" or "defendant") alleging infringement of U.S. Patent 7,083,276 ("the '276 patent"). On February 2, 2007 Protective filed a counterclaim against Panoptx seeking a declaration that the '276 patent is not infringed and is invalid. Now before the court is Protective's motion for partial summary judgment of invalidity as to the '276 patent. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

   This patent dispute concerns protective eyewear. Protective is the holder of U.S. Patent 6,062,688 ("the '688 patent"), issued May 16, 2000, entitled "Detachable Eyeglass Foam Shield." Panoptx is the holder of the '276 patent, issued August 1, 2006, entitled "Sunglasses with Removable Sealing Member."

Both patents involve an eye shielding system that prevents contaminants from coming into contact with the eyes. '688 patent at 1:4–7 ("The present invention relates to a device usable with eyeglasses or the like having a shield to protect the eyes, for example from liquid or solid matter that is airborne and reaches the face."); '276 patent at 1:13–16 ("This invention relates generally to eyewear for use in sports and the like; and more particularly to eyewear which is ventilated to reduce or prevent fogging, increase comfort and protect from the wind.").

Protective's patent is an eye shielding system. The patent teaches eyeglasses with a removable shield of open cell foam to block airborne liquids and solids. When the system is worn, the shield sits between the perimeter of the frame and the wearer's face. The shield is formed from air-permeable material to allow the passage of air, thus preventing fogging of the lenses. "It is particularly useful for providing protection for surgeons or other medical personnel from splashed liquids or solids. It is also useful for any workers who must wear some protective shield for their eyes. It is particularly directed toward protection from splashed bodily fluids or other harmful materials . . . ." '688 patent at 2:28–31.

Panoptx's patent is directed to sunglasses for use in sports and other recreational activities. See '276 patent at 2:19–23 ("[T]he need exists for sunglasses and protective glasses which automatically generate a flow of filtered air through the dead space and protects the eyes from particulate matter in the airstream when the user in engaged in active sports . . . ."). All of the patent claims include a "removable sealing member" with a "gasket" or a "gasket member." See generally, '276 patent. During patent prosecution, Panoptx explicitly distinguished its patent from a protective goggle designed to protect the wearer's eyes from chemicals, radiation, and the like. See Hong Dec., Ex. B at PRO000196. Also, during patent prosecution, the U.S. Patent Office ("PTO") considered the '688 patent, along with U.S. Patent Nos. 6,233,342 B1 ("the '342 patent") and 5,191,364 ("the '364 patent"), as prior art. '276 patent, p. 2.

All of the claims of the '276 patent, claims 1–22, are asserted in this litigation.

LEGAL STANDARD

I.     Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

1  II.     Patent Infringement

2          Issued patents have a presumption of validity in infringement proceedings. 35 U.S.C. § 282.
3  Determination of infringement is a two-step process. First, the court must determine the
4  meaning of the language of the claims, a question of law. Markman v. Westview Instruments, Inc.,
5  517 U.S. 370, 384 (1996). Second, the finder of fact must compare the construed claims to the
6  accused product, to determine if each claim element is present, either literally or under the doctrine
7  of equivalents. Irdeto Access, Inc. v. Echostart Satellite Corp., 383 F.3d 1295, 1299 (Fed. Cir.
8  2004).

10 III.    Novelty and Anticipation

11         The Patent Act precludes the patenting of any invention that "was known or used by others
12 in this country, or patented or described in a printed publication in this or a foreign country" before
13 the date of its invention. 35 U.S.C. § 102(a); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 314
14 F.3d 1313, 1352 (Fed. Cir. 2003). Similarly, section 102(b) provides that a patent claim is invalid if
15 the patented invention is "described in a printed publication . . . more than one year prior to the date
16 of the application for patent in the United States." 35 U.S.C. § 102(b); see Schering Corp. v.
17 Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir 2003). To anticipate under either section 102(a)
18 or section 102(b), a single prior art reference must disclose every limitation of the claimed invention.
19 See Schering, 339 F.3d at 1377 (citing Lewmar Mar., Inc. v. Barient, Inc., 827 F.2d 744, 747 (Fed.
20 Cir. 1987)). Furthermore, such disclosure must be "enabling"—i.e., it must be sufficient to permit a
21 person having ordinary skill in the art to practice the invention. SmithKline Beecham Corp. v.
22 Apotex Corp., 403 F.3d 1331, 1342 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 2887 (quoting
23 Minnesota Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002)).

24         If every limitation in the claim is not disclosed in a prior art, it may nevertheless anticipate
25 the claimed invention if it inherently discloses a missing claim limitation. It must, however, be
26 "clear that the missing descriptive matter is necessarily present in the thing described in the
27 reference, and that it would be so recognized by persons of ordinary skill." In re Robertson, 169

4

F.3d 743, 745 (Fed. Cir. 1999). This determination of whether a claimed feature is inherent in the prior art reference is a factual issue. Hazani v. U.S. Int'l Trade Comm'n., 126 F.3d 1473, 1477 (Fed. Cir. 1977).

Thus, anticipation is a question of fact, Minnesota Min., 303 F.3d at 1343, and the determination of whether a prior art reference is enabling "is a question of law, although based upon underlying factual findings." Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1376 (Fed. Cir. 2002). "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." SmithKline Beecham, 403 F.3d at 1343. The burden of proof in all instances falls upon the party seeking to establish the invalidity of a patent claim, who "must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003).

IV.     Obviousness

An additional prerequisite to patentability is the "nonobviousness" requirement of 35 U.S.C. section 103(a), which states:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in [35 U.S.C. § 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

To prove that a patented invention is invalid as obvious, the accused infringer must identify prior art references "which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999) (citations omitted). "Obviousness is a question of law premised on underlying findings of fact." Eolas Techs. Inc. v. Microsoft Corp., 399 F.3d 1325, 1332 (Fed. Cir. 2005), cert denied, 126 S. Ct. 568 (2005) (citing Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966)).

These underlying factual determinations include: (1) the scope and content of the prior art;

5

(2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and, if necessary, (4) secondary evidence of nonobviousness. Graham, 383 U.S. at 17–18; Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc., 73 F.3d 1085, 1087–88 (Fed. Cir. 1995). When determining the level of ordinary skill in the pertinent art, the court may consider: (1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; (5) the educational level of the inventor; and (6) the educational level of active workers in the field. Environmental Designs v. Union Oil Co. of Cal., 713 F.2d 693, 696 (Fed. Cir. 1983), cert. denied, 464 U.S. 1043 (1984). Secondary evidence of nonobviousness can include commercial success of the invention, long-felt but unsolved needs, failure of others to solve the problem, licensing of the patented invention, professional recognition and approval, and copying of the invention. Graham, 383 U.S. at 17–18; Minnesota Min & Mfg. Co. v. Johnson & Johnson Orthopedics, Inc., 976 F.2d 1559, 1573 (Fed. Cir. 1992). Like anticipation, the affirmative defense of obviousness must be established by clear and convincing evidence. See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1353 (Fed. Cir. 2003).

The Supreme Court has recently clarified the test for obviousness, specifically the analysis applicable to whether there exists some "teaching, suggestion or motivation" to combine prior art references, which has traditionally been a requirement for a finding of obviousness. The Court described this test as a "helpful insight" rather than a rigid formula, and held that "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." KSR Int'l Co. v. Teleflex Inc., 550 U.S. ___, 127 S. Ct. 1727, 1741 (2007). The Court further emphasized the need for courts to value "common sense" over "[r]igid preventative rules." Id. at 1742–43.

While KSR was pending before the Supreme Court, the Federal Circuit emphasized the flexibility of the teaching, suggestion or motivation analysis in DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co., 464 F.3d 1356 (Fed. Cir. 2006), cert. denied, 127 S. Ct. 2937

6

(2007). There, the court held that the "suggestion test is in actuality quite flexible and not only permits, but requires, consideration of common knowledge and common sense." Id. at 1367. Furthermore, the court acknowledged the possibility of an implicit motivation to combine, i.e., one not explicitly apparent in the prior art. "If, as is usually the case, no prior art reference contains an express suggestion to combine references, then the level of ordinary skill will often predetermine whether an implicit suggestion exists." Id. at 1370. Thus a high skill level renders a finding of implicit motivation more likely, as skilled individuals are more likely to combine references "without being told to do so." Id.

Accordingly, this court's analysis of the parties' arguments regarding obviousness must be flexible and guided by common sense.

DISCUSSION

I.      Level of Ordinary Skill

The parties agree that the level of ordinary skill in the art is possessed by an individual having either a bachelors degree in mechanical engineering or other applicable engineering science and several years of experience, or an individual having less education, such as an associates degree in applied sciences (chemistry/physics) or engineering technology, with more practical experience.

II.     Claim Construction

The parties agree to the construction of the following terms. "Lens means for protecting a wearer's eyes" as "lens"; "temple bracket" as "structure for attaching a temple bar or strap"; "means for supporting the frame on the wearer's head" as "temple bars or a strap"; and "wraparound foam gasket" as "a substantially unbroken expanse of cushioning material which wraps from the edge of the front surface of the sealing member adjacent to the orbital opening of the sealing member across the rear surface of the sealing member to the outer periphery of the sealing member."

III. <u>Anticipation</u>

    A.     <u>Independent Claims 9, 21, and 22</u>[1]

There is only one point of contention between the parties regarding anticipation of independent claims 9, 21, and 22 of the '276 patent: the use of "sunglasses" in the preamble of all these claims and use of "for use in sports and casual activities" in the preamble of Claims 9 and 21.[2] This contention also extends to the anticipation of dependent claims 11, 15, 18, 19, and 20. Protective has clearly shown that the rest of the limitations recited in the claims were anticipated by the '688 patent. Pfriem Dec., ¶¶ 10–41; <u>id.</u>, Ex. B. Panoptx does not challenge this demonstration and thus the court is convinced that the rest of the limitations were anticipated by the '688 patent.

Whether the preamble constitutes a limitation to a claim is a matter of claim construction, and hence, a matter of law. <u>Catalina Mkt'g Int'l, Inc. v. Coolsavings.com, Inc.</u>, 289 F.3d 801, 807 (Fed. Cir. 2002). A preamble generally limits the claimed invention if it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." <u>Id.</u> at 808 (internal quotations omitted). For instance, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention. On the other hand, if the body of the claim sets out the complete invention, then the language of the preamble may be superfluous." <u>Eaton Corp. v. Rockwell Int'l Corp.</u>, 323 F.3d 1332, 1339 (Fed. Cir. 2003) (internal citations and quotations omitted). "Thus, if the preamble helps to determine the scope of the patent claim, then it is construed as part of the claimed invention." <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 418 F.3d 1282, 1305 (Fed. Cir. 2005).

The preamble here limits the scope of the claim. The claims only cover sunglasses as opposed to more general eyewear. The claim further teaches a "lens means for protecting a wearer's eyes . . . ." which has been construed above as "lens." '276 patent at 5:59–60. Taking the terms in conjunction and in context with the patent specification, it is clear that the patentee meant protection from the sun in addition to protection from particulate matter. There is some merit to Protective's argument that the body of the claim sets out the complete invention, and thus the language of the preamble may be superfluous. The "sunglass" language, however, was added to the patent in order

8

1 to distinguish the invention over the prior art. See Opp. Br. at 4; Hong Dec., Ex. B at
2 PRO000204–220. This provides further evidence that the scope of the limitation extends only to
3 sunglasses and not eyewear generally. Finally, the preamble is necessary to give life and meaning to
4 the claim because the patent focuses on the ability of the user of the invention to wear the eyewear
5 for casual purposes independent of whether the user has prescription glasses. '276 patent at
6 1:64–2:4.[3]

7 The statement "for use in sports and casual activities" does not limit the invention. This is
8 because "where a patentee defines a structurally complete invention in the claim body and uses the
9 preamble only to state a purpose or intended use for the invention, the preamble is not a claim
10 limitation." STX, LLC v. Brine, Inc., 211 F.3d 588, 591 (Fed. Cir. 2000). This is further buttressed
11 by the fact that "preambles describing the use of an invention generally do not limit the claims
12 because the patentability of apparatus or composition claims depends on the claimed structure, not
13 on the use or purpose of the invention." Catalina, 289 F.3d at 809. Furthermore, the intended use of
14 the sunglasses does nothing to distinguish the invention over the prior art.

15 In general, Panoptx's argument relies on its assertion that the '276 patent is in a different
16 field than the '688 patent, namely, sunglasses versus work goggles. As stated above, the patentee
17 distinguished the '276 patent from prior art based upon the fact that his patent related to "sunglasses
18 . . . for wear during sports and casual activities." Hong Dec., Ex. B at PRO000196. The patent
19 specification also mentions use of the invention during vigorous activities and casual activities. See
20 '276 patent at 5:21–40. In response, Protective argues that to one skilled in the art, sunglasses are
21 clearly a subset of eyeglasses and therefore the '276 patent is anticipated by the '688 patent. There
22 is a statutory presumption of validity and the PTO's review of the '688 patent when approving the
23 '276 patent must be given some weight. That presumption, however may be overcome. Though the
24 preferred embodiments of Protective's patent focus on eyeglasses (or goggles), there is no limitation
25 in their claims that limits the patent from use with sunglasses. See '688 patent at 1:4–5 ("The
26 present invention relates to a device usable with eyeglasses or the like . . . ."). The patent is
27 specifically "designed to fit closely inside the eyeglass or goggle frames" and is "useful for any
28

9

workers who must wear some protective shield for their eyes." '688 patent at 2:23–24, 2:28–30. The patent may just as easily be applied to construction workers working in the sun in dirty surroundings as it may be applied to doctors and medical personnel. Therefore, even if the term "sunglasses" were not part of the claim limitation, the claims would nonetheless be anticipated.[4]

U.S. Patent No. 6,641,263 ("the '263 patent") is the parent of the '276 patent. Panoptx claims that when the court conducts its anticipation analysis, the prosecution history of the '263 application should be given no weight. During the prosecution of the '263, Panoptx cancelled multiple claims because they were anticipated or rendered obvious by the '688 patent. Protective now tries to apply the prosecution history of the '263 application to this action primarily because, according to Protective, the patent examiner did not rely on the '688 patent when examining the '276 patent application. This is incorrect. The '276 patent specifically states that the examiner was aware of the '688 patent though she did not cite to the same. '276 patent at p. 2. And, the primary examiner on the '263 is shown to be the same as the primary examiner on the '276. See '263 and '276 patents at p.1, respectively. However, even if the prosecution history of the '263 patent is considered, it would not lead to a different result. Specifically, the argument that un-vented claims in the '263 patent anticipated by the '688 patent are distinguishable from the un-vented claims of the '276 patent because they specifically relate to sunglasses only[5] is discussed above. Second, the argument that vented claims of the '263 patent are different from the claims of the '276 patent because of the additional limitation in the '276 patent that the shield have vents covered with foam is discussed below under obviousness.[6] Third, the argument that the '688 patent teaches away from using the materials recited in Claims 10-14 of the '276 patent is also discussed below under obviousness.

B.      Dependent Claims 11, 15, 18, 19, 20

Other than two exceptions, there is no argument that Protective has clearly shown that all the limitations recited in claims 11, 15, 18, 19, and 20 of the '276 patent were anticipated by the '688 patent. There is argument regarding the effect of the preamble terms and whether Claim 15 is

10

anticipated. The effect of the preamble terms is discussed above. The court now turns to Claim 15.

Panoptx argues that the '688 patent only discloses a "substantially rigid member 40a" that is attached to the foam "shielding element 42a" as opposed to the gasket that "comprises a flexible semi-rigid member," as required by the '276 patent. These distinctions are illusory. The court finds no difference between a "substantially rigid" member and a "flexible semi-rigid" member. They both define a stiff yet resilient member. Pfriem Reply Dec., ¶¶ 11–13. Alternatively, this claim is invalid for obviousness in light of the '688 patent, in combination with the knowledge of one skilled in the art, because the '688 patent teaches a silicone foam rubber for use as the gasket member.[7] '688 patent at 4:49–52; Pfriem Dec., ¶ 12. If there is in fact a difference between a "substantially rigid" member and "flexible semi-rigid" member, the court is convinced that silicone foam rubber falls into both categories. Thus the use of silicone foam rubber makes the "flexible semi-rigid member" limitation obvious.

Thus, these claims are anticipated and, also, rendered obvious by the '688 patent.

IV.   Obviousness

    A.   Independent Claim 1, and dependent claims 2-8 and 17

These claims are "vented claims" requiring ventilation openings. See, e.g., '276 patent at 6:2–7. Most of the claim limitations here are clearly disclosed by the '688 patent. Pfriem Dec., Ex. B. The additional limitations in claims 2-8, which all depend from Claim 1, are not contested by Panoptx. The major contested difference between these claims and the '688 patent is the addition of vents (Claim 17), or the covering of those vents with foam (Claim 1), to the shield of the '688 patent. Claim 1 is thus narrower than Claim 17 and the court will therefore focus on Claim 1. Protective argues that three separate combinations of prior art makes these additions obvious: 1) the '688 patent in conjunction with the knowledge of one skilled in the art; 2) the '688 patent in combination with either the '342 patent or the '364 patent, which both disclose ventilation holes covered in foam; 3) the '688 patent in conjunction with either U.S. Patent No. 5,711,035 ("the '035 patent") or U.S. Patent No. 5,682,621 ("the '621 patent"), which both disclose ventilation holes not

covered by foam. The relevant disclosures of the '342 patent and the '364 patent form a super-set of the relevant disclosures of the '035 patent and the '621 patent. The court will therefore focus on the former patents.

Generally, Panoptx argues that the '688 patent teaches away from combining the references cited by Protective. Specifically, it argues that protective eyeglasses or goggles for use by medical or other personnel who need a high-level of protection teach away from sunglasses for sports and casual activities requiring less protection. Assuming that the "sunglass" and "goggle" fields are disparate, one of skill in the art would nevertheless be aware of developments in both the "sunglass" field and the "goggle" field. Thus, one of skill in the art would be motivated to combine references from either field into the other in order to innovate in the other field. See KSR, 127 S. Ct. at 1740 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."). Furthermore, nothing in the '688 patent teaches away from using innovations found in the field of "goggles." The '688 patent is silent on the subject and the patent's description of one structure does not teach away from an alternative structure. See In re Icon Health and Fitness, Inc., 496 F.3d 1374, 1281–82 (Fed. Cir. 2007). In sum, the '688 patent does not teach away from combining the references cited by Protective.

The patents referenced in Protective's first two combinations were all considered by the PTO during the '276 patent's prosecution and the claims in question were nevertheless approved. The approval, however, occurred because the PTO examiner found that the prior art fails to disclose "said removable sealing member comprising one or more ventilation opening" and that in combination with the claimed subject matter "could be allowable over the prior art of record." Hong Dec., Ex. B at PRO000240. The distinction, therefore, was the use of vents as opposed to air-permeable shields. Even though the court gives the PTO's decision the necessary deference, the court is not bound by its decision and must conduct its own analysis.

Panoptx argues that there is no apparent reason to change the air-permeable open-cell

detachable foam shield of the '688 patent because it serves its goal of "permit[ting] enough air to pass through it, so that it inhibits the fogging up of the wearer's eyeglasses or goggles . . . ." '688 patent at 2:53–57. This rationale fails because one of ordinary skill in the art would realize that more or less air could pass through the eyewear if vents were or were not used. Thus, changing needs or desires, e.g., excess fogging, would direct one of ordinary skill in the art to combine vents with the already air-permeable shield of the '688 patent. The use of vents in eyewear was commonplace when the '276 patent was issued. See generally, '342 patent, '364 patent, '035 patent, '621 patent. Furthermore, it was commonly known, both within and without the art, that the use of vents prevents fogging.[8] Therefore, it would have been obvious to use vents in conjunction with the '688 patent. That action, however, would have led to the possibility of particulate matter coming into contact with the face and eyes.

In order to continue the blockage of particulate matter from coming into contact with the face or eyes, it also would have been obvious to cover the vents with air-permeable material such as foam. In fact, that is exactly what the '688 patent teaches. Here, Protective asks the court to make two leaps, with the second dependent upon the first, in order to find the claims of the patent-in-suit obvious. These leaps are not unrelated or illogical, but logically flow from one to the other. Given the protective purpose of the shield, once the decision to use vents has been made, then the decision to cover them in order to block the passage of particulate matter would naturally follow.

Finally, in order to determine if making sunglasses similar to the eyeglasses taught by Protective's patent would be obvious, the court now turns to the secondary evidence provided. This includes the secondary considerations of long-felt but unmet need, failure of others, industry acclaim, and commercial success related to gasket-covered vents.

Panoptx's arguments make clear that there was a long-felt but unmet need for sunglasses that protected against particulate matter, were ventilated, and allowed the wearer to remove the protective shield. Hogen Dec., ¶ 6. Panoptx's sunglasses with foam covered vents and removable eyecups were introduced in 2002. At that time, no other company had incorporated foam covered ventilation openings and a removable eyecup to address both the need for eye protection and non-

13

1 fogging eyewear. Panoptx's invention was met with significant industry acclaim related to the
2 removable eyecup and anti-fog venting. Id., ¶ 10. Finally, Panoptx has found significant
3 commercial success in its products that incorporate these features. Id., ¶¶ 11-12.

4     Panoptx, however, has been unable to demonstrate a nexus between these secondary
5 considerations and the features that distinguish its patent from the prior art. The fact that Panoptx's
6 patented product differs from the prior art because it is limited to sunglasses is of no consequence to
7 Panoptx's arguments. Eyewear that protects against particulate matter, is ventilated, and allows the
8 wearer to remove the protective shield were all disclosed by the '688 patent. Panoptx incorporated
9 all those features into sunglasses, which may be good marketing strategy, but is nevertheless un-
10 patentable because "success is relevant in the obviousness context only if there is proof that the sales
11 were a direct result of the unique characteristics of the claimed invention--as opposed to other
12 economic and commercial factors unrelated to the quality of the patented subject matter." In re
13 Huang, 100 F.3d 135, 140 (Fed. Cir. 1996). There is nothing unique about a new line of sunglasses
14 being introduced in 2002. The same applies to sunglasses with vents (either covered or uncovered).
15     In sum, these claims are obvious in light of the prior art.

17     B.    <u>Dependent claims 10, 12-14, and 16</u>

18     Claims 10, 12-14, and 16 all depend from Claim 9, and provide further description of the
19 claimed gasket material. Most of the claim limitations are clearly disclosed by the '688 patent.
20 Pfriem Dec., Ex. B. The '688 patent, however, distinguishes prior art based on its air-permeability.
21 '688 patent at 1:23–26, 1:41–42, 1:58–60, 2:1–2, 2:5–6. Therefore the patent teaches away from
22 using non air-permeable materials. In its preferred embodiment, the '688 patent discloses the use of
23 open-cell foam that "allows passage of air, but resists the passage of solid or liquid matter." Id. at
24 5:8–10. To one of skill in the art at that time, it would have been obvious to substitute open-cell
25 foam for any other material that allows for the passage of air but nevertheless resists the passage of
26 other particles. Claims 10, 12, 13, and 14 of the '688 patent, however, recite materials that are not
27 air-permeable. Specifically, they recite a thin silicone membrane, a closed cell non-air permeable

14

foam, a fleece covering, and a laminate of open cell foam, closed cell foam and a fleece covering, respectively. In sum, it would not have been obvious to one skilled in the art to substitute such materials if there was no alternative means of air permeability.

Protective argues that once the decision to use vents was made, it would have been obvious to use non air-permeable material for the gasket, because the fogging issue would have been obviated by the use of vents. This line of argument relies on two incremental changes—first the decision to add vents and then the decision to use non-permeable material because the need for permeable material is obviated by the use of vents. As discussed above, this requires two logical leaps, with the second dependent upon the first. Since the court has ruled that it was indeed obvious to use vents instead of air permeable material, it would then also be obvious to make changes that follow from this change. Therefore, once vents are used, the need for air permeability no longer exists and one skilled in the art is no longer restricted to designing gaskets made from air-permeable material. It would then be obvious to one in the art to use the non-air-permeable materials listed above.

As stated above, the '688 patent discloses the use of open-cell foam that "allows passage of air, but resists the passage of solid or liquid matter." Id. at 5:8–10. It thus teaches away from materials that do not resist the passage of solid or liquid matter. In Claim 16 the "gasket member comprises a screen material". As with the other claims depending from Claim 9 and described above the "screen material" is a non-air-permeable material.

Thus, these dependent claims are also obvious in light of the prior art.

V.   Motion to Strike

Protective objects to Dr. Fuerst's opinion based on his qualifications. His resume, however, clearly demonstrates that he meets the standard set forth above regarding one of ordinary skill in the art. See Fuerst Dec., Ex. A. Specifically, the fact that Dr. Fuerst is an adjunct professor at the Center for Applied Science and Engineering at the Missouri State University in Springfield is enough to convince the court that he possesses the requisite qualifications. Id. In addition, Dr.

15

Fuerst's degree in visual science will be considered by the court to be an acceptable "other engineering science." Thus defendant's motion to strike is DENIED.

VI.   Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment is GRANTED.

Dated: November 9, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. The court does not reach the question of invalidity due to inoperability because this motion is directed toward invalidity due to anticipation and/or obviousness. Thus Protective's argument for invalidity due to inoperability is reserved and may be brought at a later time.

2. The court refuses to read in "for use in both sports and casual activities" into the preamble of Claim 22. It is clear from the patent specification that the patentee could have added such a phrase into whichever claims he wanted and deliberately chose not to add it to Claim 22. Furthermore, the court will not re-write claims in order to preserve their validity. See Pfizer, Inc. v. Ranbaxy Laboratories Ltd., 457 F.3d 1284, 1292 (Fed. Cir. 2006).

3. The court does not reach the question of invalidity due to inoperability because this motion is directed toward invalidity due to anticipation and/or obviousness. In addition, Panoptx has not had a chance to refute the argument for inoperability. Thus Protective's argument for invalidity due to inoperability is reserved and may be brought at a later time.

4. Even if "sunglasses" were not incorporated within the definition of "eyeglasses," the court is convinced that it would be obvious to one of ordinary skill in the art to practice the invention disclosed by the '688 patent in conjunction with sunglasses. See KSR, 127 S. Ct. at 1740 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.").

5. Panoptx also attempts to distinguish claims 9 and 22 of the '276 patent based on the fact that "the frame is construed to be worn both with and without the removable sealing member." '276 patent at 6:44–46, 8:17–19. This argument is clearly refuted by the language of the '688 patent, which envisions and allows the frame to be worn with or without the shield. '688 patent at 2:26–22, 2:33–35, 2:45–48.

6. Panoptx technically relies upon the specification of the patent, namely, the limitation that the "removable sealing member" comprises "a resilient member and a gasket member." '276 patent at 5:66–67. This limitation, however, is rendered obvious by the '688 patent which discloses both a resilient member 40a and a gasket member 42a. See '688 patent at 4:51–52, 5:6–10.

7. Protective asserts in footnotes in its memoranda that the claims are invalid for lack of enablement or inoperability and for failure to meet the written description requirement. The court does not consider invalidity grounds contained in footnotes. If they are worthy of serious consideration, they must be raised in the body of the memorandum and properly addressed as any other serious argument.

8. As any car owner residing in cold temperatures is aware, slightly opening the windows and thereby creating a vent reduces fogging of the windshield.